Estate of David J. Levenson, Deceased, Robert L. Levenson, Donald W. Levenson, Edgar Leo Levenson and Fidelity Trust Company, Executors v. Commissioner.
Levenson v. Commissioner
Docket No. 69569.
United States Tax Court
T.C. Memo 1959-120; 1959 Tax Ct. Memo LEXIS 129; 18 T.C.M. (CCH) 535; T.C.M. (RIA) 59120; June 11, 1959
*129 Louis Caplan, Esq., Frick Building, Pittsburgh, Pa., for the petitioners. Gerald Backer, Esq., for the respondent. LEMIRE Memorandum Findings of Fact and Opinion The Commissioner determined a deficiency of $22,369.15 in estate tax. The sole question presented is the value on April 2, 1953, of 155 shares of the capital stock of Retail Furniture Stores, Inc. Findings of Fact The stipulated facts are found. The decedent died at Pittsburgh, Pennsylvania, on April 2, 1953. The decedent's Federal estate tax return was filed with the district director of internal revenue at Pittsburgh, Pennsylvania. The date for fixing the value in this case is the date of death, April 2, 1953. The property, the value of which is in controversy, is 155 shares of the capital stock of Retail Furniture Stores, Inc., a West Virginia Company incorporated in 1936. Its business office is in Wheeling, West Virginia. The only activity of this company is the holding of stock in an operating company called Reichart Furniture Company. Retail Furniture Stores, Inc. will be hereinafter referred to as "Retail" and Reichart Furniture Company will be referred to as "Reichart (W. Va.)". The *130 capital stock of Retail consisted of 2,400 authorized and outstanding shares of a par value of $25 at the decedent's death. It has not been listed or traded at any stock exchange. There were no sales of the stock of Retail on the day the decedent died, since then, or for five years prior thereto. At the time of the decedent's death he was president of Retail, his son, Robert, was vice-president, and his son, Donald, was treasurer. The secretary was J. M. Nycum, who was not a stockholder. The decedent's wife and three sons owned, in the aggregate, 1,475 shares of Retail on April 2, 1953. In addition, relatives of the decedent's wife on that day owned 406 shares of Retail. The remaining 364 shares were owned by Willa P. Guckert, who was not related to the decedent or his wife, but was the daughter of a Pittsburgh banker who was a friend of the decedent. On April 2, 1953, Retail owned 600 shares of the capital stock of Reichart (W. Va.). It was a West Virginia corporation engaged in the retail installment sale of furniture and electrical appliances through stores located at Wheeling, West Virginia, and Washington, Pennsylvania. The authorized capital stock of Reichart (W. Va.) on *131 April 2, 1953, consisted of 1,500 shares of a par value of $100 per share, of which 800 were outstanding and 200 were held in the treasury. The 200 shares outstanding, which were not owned by Retail, were divided equally among parties who had no relationship to the decedent. The decedent was not an officer in Reichart (W. Va.), but his sons, Robert, Edgar, and Donald, were president, vice-president, and treasurer, respectively. On April 2, 1953, Reichart (W. Va.) owned all of the authorized capital stock of Reichart's, Inc., which consisted of 250 shares with a par value of $100 per share; all of the authorized capital stock of Bertschy Furniture Company, which consisted of 500 shares with a par value of $50 per share; and 210 of the shares of Reichart Furniture Company, hereinafter called "Reichart (Ohio)", which had an authorized capital stock of 500 shares, with a par value of $100 per share, only 350 of which were outstanding and 140 of which were owned by a relative of the decedent's wife. On April 2, 1953, Reichart's, Inc., Bertschy and Reichart (Ohio) all were engaged in the retail installment sale of furniture, Reichart's, Inc. was located at Martins Ferry, Ohio, Bertschy *132 at Wheeling, West Virginia, and Reichart (Ohio) at Youngstown, Ohio. The decedent had been engaged in the retail furniture business and the manufacture of furniture for many years prior to his death. He organized Reichart (W. Va.) in 1919 or 1920. He was so well known in the furniture industry that his advice was widely sought. He was considered to be a part of the "old guard" of that industry. The decedent, in 1936, received the Cavalier national award for outstanding and meritorius service to the entire furniture industry. The decedent became ill in January 1953. Prior to that time he had been active in the operation and supervision of the business. He consulted on purchases, composed "ads" and "mailing pieces," "took care of personnel problems" including union negotiations and purchased the trucks. The business employed about 300 people at the time of the decedent's death. Each retail store had a branch manager. Their salaries varied from $6,000 to $15,000 a year. The decedent's sons, Robert, Donald, and Edgar, each owned 240 shares of Retail and were actively engaged in the business at the time of the decedent's death. All three sons were college trained. Their age, the year *133 when they entered the business, and the corporate offices they held on April 2, 1953, were as follows: Robert 37 years 1937
Vice-Pres. Retail
Pres. Reichart
(W. Va.)
Pres. Bertschy
Pres. Reichart's,
Inc.
Vice-Pres. Reichart
(Ohio)
Edgar 30 years 1945
Vice-Pres. Reichart
(W. Va.)
Treas. Reichart's,
Inc.
Donald 33 years 1947
Vice-Pres. Retail
Treas. Reichart
(W. Va.)
Treas. Bertschy
Vice-Pres. Reich-
art's, Inc.
The decedent was not an officer of Reichart (W. Va.), the leading retail sales outlet of the business, nor was he an officer of Reichart's, Inc., or Reichart (Ohio). Reichart (W. Va.) paid its officers $53,000 in salaries in 1952, and Reichart (Ohio) paid its officers $17,000 in salaries in that year. The decedent resided in Pittsburgh. He visited the stores in Wheeling, West Virginia, 62 miles distant, at least twice a week and at the same time he would also visit the stores in Washington, Pennsylvania, and Martins Ferry, Ohio. The decedent, his sons, and the branch managers of the stores attended the furniture markets, including the Chicago Furniture Market. These semi-annual markets were the meeting ground *134 for the manufacturers of furniture and the retail merchants and their salesmen. The actual purchasing was made by the decedent's sons and the branch managers after they had consulted and discussed the matter with the decedent. The following is a balance sheet of Retail at April 2, 1953: Cash (Wheeling)
$ 1,635.77
(Pittsburgh)
16,651.64
$ 18,289.41
Notes, Reg. D. J. Levenson
5,871.16
1 1/2% U.S. Treasury Notes
($75,000 par due 3/15/55)
73,804.69
Reichart Furniture Co.
100,000.00
Miscellaneous Assets
435.74
Capital Stock
$60,000.00
Surplus earned
44,864.77
Paid in
5,000.00
Capital surplus (in
liquidation of
Standard of Pitts-
burgh)
88,534.23
$198,399.00
$198,399.00
The following is the balance sheet of Reichart (W. Va.) at December 31, 1952: Assets
Cash
$ 133,809.06
Accounts Receivable: Installment
$1,524,565.89
Other
94,353.77
1,618,919.66
Merchandise Inventory
507,539.67
Investment, U.S. Government
Obligations
503,100.00
Investment, Corporate Stocks
Bertschy, Reicharts, Inc.
and Reichart's (Ohio)
84,012.50
Capital Assets: Buildings
$ 290,907.52
Fixtures & Equip-
ment
92,366.18
$ 383,273.70
Less: Reserve for
Depreciation
218,972.51
164,301.19
Land
71,850.00
Deferred Charges
37,138.21
$3,120,670.29
Liabilities
Accounts Payable
$ 137,902.98
Accrued Taxes
191,417.93
Customers Deposits
8,071.88
Reserves Unrealized
Gross Profit
$ 627,909.27
Reserves Rebuilding
3,458.85
631,368.12
Common Stock
Common - 1,000
shares
100,000.00
Earned Surplus
2,126,909.38
$2,226,909.38
Treasury Stock - 200
shares
75,000.00
2,151,909.38
$3,120,670.29
*135 The following is the balance sheet of Bertschy at December 31, 1952: Assets
Cash
$ 63,301.71
Accounts Receivable
206,508.78
Inventory
50,134.19
U.S. Government Obligations (50
U.S. Treasury Notes)
50,000.00
Furniture and Fixtures
$1,975.04
Trucks
2,808.66
Total Depreciable As-
sets
$4,783.70
Less: Reserve for De-
preciation
1,817.68
2,966.02
Accrued interest
1,120.00
Due from Affiliated Company
12,044.98
Prepaid Taxes and insurance
2,499.44
$388,575.12
Liabilities & Capital
Accounts Payable
$ 6,178.48
Taxes Payable
26,244.52
Customers' Deposits
2,399.48
Unrealized Gross Profits
91,208.64
Capital Stock
25,000.00
Earned Surplus
237,544.00
$388,575.12
The following is the balance sheet of Reicharts, Inc., at December 31, 1952: Assets
Cash
$ 36,844.72
Accounts Receivable
153,043.60
Inventory
35,246.05
Furniture and Fixtures
$1,719.92
Less: Reserve for Depre-
ciation
560.27
1,159.65
Prepaid Insurance
2,124.52
$228,418.54
Liabilities and Capital
Accounts Payable
$ 50,434.25
Taxes Payable
12,355.42
Unrealized Gross Profits
62,294.40
Capital Stock
25,000.00
Earned Surplus
78,334.47
$228,418.54
*136 The following is the balance sheet of Reichart (Ohio) at August 31, 1953: Assets
Cash
$ 73,644.94
Accounts Receivable
451,625.21
Inventory
172,185.06
Investments (U.S. Government
Obligations)
179,299.25
Furniture and Fixtures
$10,367.95
Trucks and Automobiles
5,096.93
$15,464.88
Less: Reserve for Depre-
preciation
8,002.67
7,462.21
Life insurance cash surrender
value
17,333.84
Sundry Receivables
26,973.01
Deferred charges
8,798.45
$937,321.97
Liabilities and Capital
Accounts Payable
$ 76,350.44
Accrued Taxes
52,350.94
Accrued Expenses
16,304.09
Customers Deposits
6,344.28
Unrealized Gross Profits
199,548.64
Capital Stock
35,000.00
Earned Surplus
551,423.58
$937,321.97
The accounts in the above balance sheets entitled "Unrealized Gross Profits" or "Reserves unrealized profits" are not true liability accounts but represent unreported profits on installment sales. The following chart shows the working capital, current assets and current liability ratios, excess of working capital over operating expenses for 1952, net worth per share and, in the case of Reichart (W. Va.), net worth *137 exclusive of investment in subsidaries and net worth per share exclusive of the value of the investment in subsidiaries, which data has been developed from their balance sheets: Reichart (W. Va.)
Bertschy at
Reichart's, Inc.
Reichart (Ohio)
at 12/31/52
12/31/52
at 12/31/52
at 8/31/53
Working Capital (Current Assets mi-
nus current liabilities)
$1,930,948
$297,166
$162,344
$784,853
Ratio of current assets to current lia-
bilities
6.9:1
9.5:1
3.6:1
6.4:1
Excess of working capital over operat-
ing expenses for 1952
779,642
187,143
140,609
424,688
Net Worth (assets minus liabilities)
2,758,277
328,752
140,628
750,978
Net worth per outstanding share
3,447
657
562
1,501
Net worth exclusive of investment in
subsidiaries
2,674,246
Net worth per share exclusive of in-
vestment in subsidiaries
3,342
Rate of return on total assets
8%
The following tabulation reflects the earnings after taxes of Reichart (W. Va.) and Bertschy and 60 per cent of the earnings after taxes of Reichart (Ohio), for the years 1943 to 1952, inclusive, and the earnings after taxes of Reichart's, Inc., from its formation in 1948 through 1952: *138 Reichart
Reichart
Year
(W. Va.)
Bertschy
Reichart's, Inc.
(Ohio) 60%
1952
$ 260,840.00
$ 53,329.30
$ 35,011.44
$ 39,489.90
1951
131,268.24
36,738.19
21,528.76
65,346.62
1950
381,053.59
55,526.91
46,077.85
10,519.51
1949
267,179.32
37,734.33
38,705.84
24,544.84
1948
349,680.46
53,881.04
4,993.17
53,296.93
1947
349,549.62
41,163.24
0
20,018.61
1946
301,282.48
57,541.02
0
40,757.81
1945
143,077.34
18,534.70
0
15,027.42
1944
151,718.17
23,984.01
0
18,930.20
1943
112,101.77
19,114.80
0
42,159.43
$2,447,570.99
$397,547.54
$146,317.06
$330,091.27
The dividends received by Reichart (W. Va.) by reason of its holding in Bertschy, Reichart's, Inc., and Reichart (Ohio), the dividends paid by Reichart, (W. Va.), and the dividends paid per outstanding share of Reichart (W. Va.), during the period from 1943 to 1952, were as follows: Dividends
Dividends
Dividends
Paid Per
Year
Received
Paid
Share
1943
$ 36,000
$40,000
$ 50
1944
10,126
40,000
50
1945
16,063
40,000
50
1946
32,063
80,000
100
1947
32,063
100,000
125
1948
30,063
100,000
125
1949
31,863
100,000
125
1950
41,094
120,000
150
1951
41,094
120,000
150
1952
41,094
120,000
150
$311,523
$860,000
$1,075
*139 World War II had an adverse effect on the furniture and appliance business, because manufacturers were restrained from producing refrigerators, washers and ranges, and the furniture products permitted to be produced were of an inferior quality. The inventories during that period were "frozen". The furniture business was also adversely affected by the fact that due to war-time restrictions private residential homes were not being built. Moody's "Manual of Investments" for 1958 (pages a3 and a10) reflects the following figures for home furnishings sales and private residential building sales in millions for the period 1948 through 1957: Private Resi-
Home Fur-
dential Build-
Year
nishings
ings
1948
$ 6,194
$ 8,580
1949
6,790
8,267
1950
8,249
12,600
1951
8,604
10,973
1952
8,926
11,011
1953
9,125
11,930
1954
9,679
13,496
1955
10,054
16,595
1956
10,667
17,632
1957
10,587
16,571
The business was continued after the death of the decedent and expanded shortly thereafter. A furniture store was acquired in 1955 in Moundsville, West Virginia, twelve miles from Wheeling. The gross sales of the business have not diminished since *140 the death of the decedent. There have been no changes in the stock ownership of the business since the decedent's death, except for small gifts of stock of Retail by the decedent's wife to her grandchildren. The other stockholders have not approached the Levensons with the idea of buying or selling the stock. The petitioners valued the stock of Retail at $250 a share in their estate tax return; the Commissioner in his notice of deficiency determined the value of the stock to be $1,033 a share. The value of a share of Retail stock at April 2, 1953, was $900 per share. The total value of the 155 shares of stock of Retail held by the decedent at the date of his death was $139,500. Opinion LEMIRE, Judge: The fixing of a value for closely held stock which is not listed upon any exchange and which has not been traded in at any time related to the valuation date is never without difficulty. The wide difference between the $252.85 a share valuation for the stock of Retail now conceded by the petitioners and the $1,033 a share valuation determined by the Commissioner in his notice of deficiency and urged by him on brief, makes evident the complexities of the problem. The petitioners *141 bottom their case primarily upon the opinion evidence of Donald, one of the decedent's sons, an officer of both the holding company, whose stock was being valued, and of the main operating company, and the opinion evidence of a vice-president and head of the tax department of a Pittsburgh bank, who knew the decedent and was familiar with the businesses. Their testimony as to the value of the stock of Retail is not without probative value. However, this is not a case where there is no evidence other than the testimony of the taxpayers' witnesses as to the value of the property in question. The present record is replete with substantial stipulated evidence tending to establish the value of the stock. A consideration of the entire record has led us to the value indicated in our ultimate finding of fact. The petitioners appear to urge after the decedent's death the stock lacked value because the decedent's business acumen and stature in the retail furniture business was responsible for the success of the operations of the retail stores whose stocks were held by Retail. The decedent no doubt was an able and experienced executive. The businesses, however, are not shown to have been inadequately *142 manned by the decedent's three sons and by branch managers, who all appear to have received compensation commensurate with such responsibility. The businesses continued successful after the decedent's death, which is further evidence that the new management was fully competent at the time of the decedent's death. These companies were all sound and strong with a long history of success. An acceptable factor to be considered in arriving at a value of such stock as that of Retail is its asset value. The petitioner represents the book value to be $82.49 per share. This is based upon the cost of Reichart (W. Va.) stock to Retail in 1936, and ignores the large equity value inuring to the stock by the accumulation of over $2,125,000 surplus by December 31, 1952. Another acceptable factor to be considered in establishing the value of such stock as that of Retail is the capitalization of earnings. In this, there is a partial realm of agreement between the parties. They both appear to regard this as "the most equitable method of computing the valuation" and accept a capitalization rate of 11 per cent, or 9 1/3 times earnings. The capitalization of earnings must be just that, and here it *143 can only be accomplished by reference to the earnings of the operating companies. A problem in arriving at the valuation by this method is selecting a truly representative figure of annual earnings to be capitalized. The Commissioner would obtain this average by reference to the years 1948 through 1952. That five-year period might be subject to the objection that it reflects an undue increase in earnings by reason of the impetus given retail sales, particularly in the appliance field, by the Korean War. A ten-year period of 1943 through 1952 would tend to compensate for the Korean War spurt in sales by the leaven of World War II restrictions which would be reflected in the furniture and appliance businesses. A computed value of one share of Reichart (W. Va.) stock held by Retail on the above basis is $1,038, to which the addition of $41 per share of quick assets makes a total value per share of $1,079. Other factors, such as the strong family control, lead us to believe that this is too high. Upon a full consideration of the entire record we have concluded that the value for purposes of the estate tax of one share of Retail stock has been found by us to be $900, or $139,500 for the *144 155 shares. This finding of value is based upon a full consideration of the entire record. Decision will be entered under Rule 50.